# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY MINOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV00586 ERW |
| ) | |
| CITY OF CHESTERFIELD, MO, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendants' Motion for Summary Judgment [doc. #81].

**I.  BACKGROUND FACTS**

On the morning of January 9, 2003, Chesterfield Police Officer Micheal Barron ("Officer Barron" or "Defendant Barron") received a notice or bulletin alleging that a vehicle was speeding at or near Clarkson Road in Chesterfield, Missouri. Officer Barron stopped the vehicle and asked the driver, Plaintiff Jeffery Minor ("Plaintiff"), for his license. Officer Barron returned to his squad car and began a computer search on Plaintiff. The computer search revealed an outstanding arrest warrant for Plaintiff, from the Neosho Police Department, for passing bad checks. Plaintiff claimed that the matter was previously resolved and, therefore, the warrant was in error. After conducting a second computer search, Officer Barron ordered Plaintiff out of his vehicle.

Officer Barron then proceeded to place Plaintiff under arrest. He patted down Plaintiff and began to handcuff him with his hands behind his back. At this point, Plaintiff claims he told

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Officer Barron that he recently had back surgery[1] and asked Officer Barron to handcuff him with his hands in front of his body or to use leg irons, instead of handcuffs. Plaintiff also claims he told Officer Barron that the medical records documenting the surgery were in his vehicle. Plaintiff claims he asked his niece, who was a passenger in the vehicle, to retrieve the medical records from a briefcase in the backseat of the vehicle. Plaintiff alleges that Officer Barron ordered Plaintiff's niece to remain in the vehicle and shouted at Plaintiff to "put [his] f--ing hands behind [his] back." Minor Dep. at 26. Plaintiff claims to have responded, "Okay. I'll cooperate. I just don't want you to hurt me." *Id*. Plaintiff claims Officer Barron "pulled, jerked, and pushed" Plaintiff's arms and body as he escorted Plaintiff to the squad car.

Officer Barron then drove Plaintiff to the Chesterfield police department. While in the squad car, Plaintiff claims that he was forced to sit in such a way that great pressure and strain were placed on his back at or near the point where he underwent surgery. The record indicates that Plaintiff did not voice any complaints about his alleged discomfort during the transport to the police department.

Plaintiff was subsequently transferred to the St. Louis County Police Department. Plaintiff claims that his arms were again "pulled painfully behind his back" and "his wrists were tightly handcuffed." The Neosho Police Department rescinded its extradition request and the St. Louis County police released Plaintiff that afternoon. Plaintiff complains that his pre-existing back injuries were aggravated as a result of being handcuffed and that the incident left him with back pain and stiffness. Beyond exacerbation of his previous injuries, Plaintiff reported no other mental or physical problems resulting from the incident.

After leaving the police station, Plaintiff visited a chiropractor, due to the alleged pain in

---

[1] Plaintiff claims he had back surgery approximately six months prior to the incident at issue in this case, on July 31, 2002.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

his back. The next day, January 10, 2003, Plaintiff went to the emergency room. Plaintiff received medication for his back pain and was referred to Joseph Dooley, M.D. ("Dr. Dooley"). On January 23, 2003, Plaintiff had a magnetic resonance imaging (MRI) scan, which revealed post-surgical disk herniation. Dr. Dooley prescribed Plaintiff medication for his back pain. In a follow-up visit on February 13, 2003, Dr. Dooley indicated that Plaintiff's "disc problems are about back to baseline" and that he did not "show new or worsening findings on examination." *See* Def.'s Stat. of Material Facts In Supp. of Mot. for Summ. J., Ex. I.

On March 31, 2003, Plaintiff again visited Dr. Dooley for severe back pain. In his report, Dr. Dooley indicated that Plaintiff explained that, the day before, he bent over to lift something and fell to his knees with pain. On October 10, 2003, Plaintiff underwent a second surgery for his back injuries.

On April 12, 2005, Plaintiff filed this action, pursuant to 42 U.S.C. § 1983, in the Circuit Court of the County of St. Louis, against the City of Chesterfield, Missouri, Chesterfield Mayor John Nations, Chesterfield Police Chief Ray Johnson, Chesterfield Police Officer Micheal Barron, Chesterfield Police Officer Jane Doe, St. Louis County, Missouri ("St. Louis County"), St. Louis County Police Chief Dave McCracken ("Mr. McCracken"), St. Louis County Executive Charles Dooley ("Mr. Dooley"), City of Neosho, Missouri, Neosho Mayor Howard Birdsong ("Mayor Birdsong") and Neosho Dispatcher Chancy Huntzinger ("Mr. Huntzinger"). Plaintiff claims that he was wrongfully arrested, with excessive force, in violation of his Fourth Amendment rights. Plaintiff also alleges state law assault and battery claims against Officer Barron in his individual capacity. On April 12, 2005, Defendants timely removed the matter to this Court.

On May 30, 2006, Plaintiff filed a five-count Third Amended Petition. Following discovery, Plaintiff voluntarily dismissed the wrongful arrest counts (Counts I and II) against all defendants. Additionally, all counts against St. Louis County, Mr. McCracken, Mr. Dooley, City

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of Neosho, Mayor Birdsong and Mr. Huntzinger were voluntarily dismissed. Counts III, IV, and V remain. In general terms, Count III, against Defendants Officer Barron, Chief Johnson, Mayor Nations and Police Officer Jane Doe,[2] alleges that Plaintiff was arrested with excessive force in violation of the Fourth Amendment and the Constitution of the State of Missouri; in Count IV, against Defendant City of Chesterfield, Plaintiff claims that the City has a policy or custom which led to Plaintiff's alleged injuries; and in Count V, Plaintiff alleges state law assault and battery claims against Officer Barron.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence

---

[2] Because Police Officer Jane Doe has not been identified, named or served, the Court will dismiss Plaintiff's claims against her.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## III. DISCUSSION

### A. Section 1983 Claims: Counts Three and Four

Section 1983 is a remedial statute. It provides that a person acting under "color of any statute, ordinance, regulation, custom, or usage, of a State or Territory or the District of Columbia" is liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987). In a § 1983 action, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Thus, in evaluating a § 1983 claim, the precise constitutional violation which is alleged must be identified. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998).

Individual Defendants raise the defense of qualified immunity which shields government officials from suit, unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person in their position would have known. *See Yowell v. Combs,* 89 F.3d 542, 544 (8th Cir. 1996) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The court analyzes an official's claim of qualified immunity using a two-part inquiry. *See Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002). The threshold question is: taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right? *Id*. In analyzing whether a plaintiff has asserted a constitutional violation, the court examines both the evidence presented and the allegations of the plaintiff's complaint. *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000). If no constitutional right would have been violated were the allegations established, there is no necessity for further

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

inquiries concerning qualified immunity. *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

If a constitutional violation can be demonstrated by the facts alleged, the next sequential step is to ask whether the right was clearly established. *Id*. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*. An officer does not lose his qualified immunity because of a mistaken, yet reasonable belief, nor does an officer lose his immunity because of a reasonable mistake as to the legality of his actions. *Id*. If the right is not clearly established, the officer's actions are protected by qualified immunity.

1. *Count Three as to Defendant Barron*

It is undisputed that Officer Barron was acting under the color of state law when he arrested Plaintiff. To satisfy the second prong of his prima facie case under §1983, Plaintiff claims that the arrest at issue was effected with excessive force and therefore his Fourth Amendment rights were violated. Specifically, Plaintiff argues Officer Barron used excessive force by handcuffing him behind his back after Plaintiff warned him that he recently had back surgery. Defendants maintain that Officer Barron did not use excessive force, or in the alternative, that he is entitled to qualified immunity.

The Fourth Amendment prohibits the use of excessive force during the seizure of a free citizen. *Graham v. Connor*, 490 U.S. 386, 388 (1989)*; Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). "The force employed by an officer is not excessive and thus not violative of the Fourth Amendment if it was 'objectively reasonable under the particular circumstances.'" *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994)). Here, the Court must ascertain whether Plaintiff has presented sufficient evidence from which a reasonable jury could find that the means Officer

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Barron used to effectuate Plaintiff's arrest were unreasonable under the circumstances.

The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Crumley*, 324 F.3d at 1007 (quoting *Graham v. Connor*, 490 U.S. at 396-397). "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. at 396 (internal citations omitted).

A viable excessive force claim can be premised upon handcuffing incident to an arrest, in some circumstances. *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). Courts have held that police officers must take known injuries into account in handcuffing an individual. *Eason v. Anoka-Hennepin East Metro Narcotics & Violent Crimes Task Force*, No. 00CV311PAM/SRN, 2002 U.S. Dist. LEXIS 10645, 2002 WL 1303023, at *5 (D. Minn. June 6, 2002) ("arresting officers are required to take an arrestee's preexisting injuries into account when assessing the level of force necessitated in a given situation"); *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 444 (N.D.N.Y. 1998) ("handcuffing a non-threatening individual in the face of a known medical condition violates clearly established constitutional rights").

There is a lack of consensus as to whether an arresting officer must credit an individual's unsupported claim that she suffers from some injury that precludes handcuffing her with her hands behind her back. Some courts have found that a plaintiff's assertions that she has a pre-existing injury are alone sufficient to require an officer to take that information into account when

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

handcuffing an arrestee. For example, in *Walton v. Southfield,* 995 F.2d 1331, 1342 (6th Cir. 1993), the plaintiff claimed that she "begged not to be handcuffed because of her injured shoulder," *id*., and told the officer that her shoulder was hurting when they were traveling to the police station, but the officer ignored her request. The court held that "an excessive force claim could be premised on [the officer] handcuffing [plaintiff] if he knew that [plaintiff] had an injured arm and if he believed that she posed no threat to him." *Id*.; *see also Aceto v. Kachajian*, 240 F. Supp. 2d 121, 125 (D. Mass. 2003) (denying defendant's motion for summary judgment on excessive force claim where officers refused plaintiff's request to handcuff her with her hands in front of her because she had an injured shoulder).

Other courts, however, including the Eighth Circuit Court of Appeals, appear to require that there be some objective manifestation of the pre-existing injury, corroborating the plaintiff's assertions, to support an excessive force claim. In *Guite*, the Eighth Circuit held that summary judgment was properly denied on plaintiff's excessive force claim because, at the time of the arrest, the plaintiff was recovering from surgery on his left shoulder and wearing a visible sling on his left arm. 147 F.3d at 750; *see also Eason*, 2002 U.S. Dist. LEXIS 10645, at *19 (denying summary judgment on excessive force claim where individual repeatedly informed arresting officers of recent heart surgery and officers had difficulty moving the individual's arms behind his back and together for cuffing); *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) (in arrest for failure to disperse, pushing suspect to ground and kneeling on back not excessive force notwithstanding suspect having informed officer of her pre-existing back and shoulder injuries).

Here, the question for the Court is whether Officer Barron was reasonable in handcuffing Plaintiff behind his back in light of Plaintiff's warning that he had back surgery. For the following reasons, the Court believes that Officer Barron's actions were reasonable and therefore do not constitute a violation of Plaintiff's Fourth Amendment rights.

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Attempting to demonstrate that Officer Barron used excessive force, Plaintiff argues that he did not pose any immediate threat nor show any signs that he intended to resist arrest. Therefore, he contends that, in light of his stated injury, Officer Barron's handcuffing him behind the back constituted excessive force. However, unlike the plaintiff in *Guite*, the record indicates that Plaintiff did not display any objective indicia of injury to alert Officer Barron that handcuffing Plaintiff behind his back may aggravate his pre-existing injuries. Without such an indication, it was reasonable for Officer Barron to use his discretion in determining the extent to which he should take into account Plaintiff's claim that he recently had back surgery. As the *Eason* court noted, "requiring that there be an objective manifestation of the injury helps to ensure that police officers are not overburdened by having to take into account unsubstantiated and potentially falsified preexisting injuries while performing their duties." 2002 U.S. Dist. LEXIS 10645, at *18.

Furthermore, unlike the plaintiffs in *Eason*, *Aceto,* and *Walton*, Plaintiff made no complaints to the officer about back pain or discomfort while he was handcuffed, which may have substantiated his claim that he had back surgery. Therefore, the Court concludes that, under these circumstances, Officer Barron's decision to ignore Plaintiff's warning about his back surgery and to handcuff Plaintiff behind his back was reasonable.

Plaintiff makes much of the fact that Officer Barron refused to review the medical records documenting the surgery, which were allegedly in a briefcase in Plaintiff's vehicle. The Court must judge the officer's conduct not with the 20/20 vision of hindsight, but from the perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. at 396. Although in hindsight it may have been judicious of Officer Barron to review Plaintiff's medical records, the Court believes that, on the scene, safety concerns made it objectively reasonable for Officer Barron to decline Plaintiff's invitation. Likewise, the Court believes it was reasonable for Officer Barron to order Plaintiff's niece to remain in the car, rather than permit her to search a briefcase in the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

vehicle for the medical records and to present them to the officer. Such an enclosed object could be a repository for a firearm or other weapon. Violence against police officers at the scene of automobile stops has become all too common, indicating the need for a cautious response by police officers to potential threats to their safety. The Court thus finds that no reasonable jury could find that the facts alleged by Plaintiff give rise to a constitutional claim of excessive force under the Fourth Amendment.

Plaintiff cannot satisfy the first prong of the qualified immunity analysis and the Court is not required to address the question of whether the right was clearly established. Accordingly, summary judgment, in favor of Defendant Barron, is appropriate on Plaintiff's excessive force claim.

2. *Count Three as to Defendants Johnson and Nations*[3]

In light of the Court's ruling that Officer Barron did not violate Plaintiff's Fourth Amendment rights by handcuffing Plaintiff behind his back, Plaintiff's claims against Defendant Johnson, based on his alleged inadequate training and supervision of Officer Barron, must also fail. *See Olinger v. Larson*, 134 F.3d 1362, 1366 (8th Cir. 1998) (holding that because the court found that detective lawfully arrested and detained plaintiff, claims against chief of police, based upon the theory that he inadequately trained or supervised detective, must be denied as moot).

3. *Count Four as to Defendant City of Chesterfield*

Count Four against Defendant City of Chesterfield ("the City") is brought pursuant to 42 U.S.C. § 1983 and is premised on a theory that the City had a custom or policy which led to Plaintiff's alleged injury. In this regard, Plaintiff alleges that the City (1) requires police officers to handcuff suspects behind their back; (2) requires officers to apply extensive force in pulling a

---

[3] Plaintiff has failed to present any argument or authority in support of his claim against Defendant Mayor Nations. Consequently, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's claims against him.

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

suspect's arms behind his back and tightly placing cuffs upon his wrists; (3) requires officers to keep suspects cuffed at all times during car-to-intake transfers; (4) authorizes intimidation during arrests; and (5) precludes officers from considering available medical information when applying restraint tools and techniques. Plaintiff also claims that the City was deliberately indifferent to his constitutional rights after receiving notice of the alleged unlawful conduct at issue in this case.

In moving for summary judgment with respect to the § 1983 claims, Defendants argue that Plaintiff has failed to present any evidence of an unconstitutional custom or policy of handcuffing. In support of their argument, Defendants produced evidence to show that Chesterfield Police Department General Order 24-02 sets forth the procedures for police officers to handcuff individuals under arrest and provides exceptions to the handcuffing policy due to injuries, age or other factors.[4] Defendants claim that Officer Barron had knowledge of such procedures.[5]

Under § 1983, local governmental entities may be sued for declaratory and injunctive relief, as well as for compensatory damages. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Local governments may be sued directly under § 1983 where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id.* Local governments may also be sued for constitutional violations due to governmental "custom," even if such custom "has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. A "custom or usage" is demonstrated by showing: (1) the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) the

---

[4] Section IIIA of General Order 24-02 provides: "All persons to be transported by employees of this Department will be properly handcuffed with their hands behind their backs and the handcuffs double locked. Exceptions may be made due to injuries, age or other factors, but in any case, the person will be secured as much as reasonable given the circumstances."

[5] In his deposition, Officer Barron testified that he read, understood and acted pursuant to General Order 24-02 on the day of the incident at issue in this case. *See* Barron Dep. at 132.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

governmental entity's deliberate indifference to or tacit authorization of misconduct after receiving notice thereof; and (3) that the custom was the moving force behind the constitutional violation. *Kula v. City of Minnetoka*, 365 F.3d 590, 604 (8th Cir. 2003). Importantly, while "[a] municipality is liable under § 1983 for unconstitutional acts by its officials or employees that implement or execute a municipal custom or policy, [it] may not be held vicariously liable for unconstitutional acts by employees." *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). In a § 1983 claim based on a municipality's failure to prevent misconduct by its employees, the municipality will only be held liable "where municipal officials can be shown to be directly responsible for the improper actions of their subordinates." *Id.* To this end, a plaintiff must demonstrate that city officials had notice of prior incidents of misconduct and deliberately failed to act on that information. *See id.*; *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996). In other words, "[t]here must exist a prior pattern of unconstitutional conduct that is so persistent and widespread as to have the effect and force of law." *Andrews*, 98 F.3d at 1075 (internal quotation omitted).

A city "cannot be liable in connection with ... an excessive force claim... whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim." *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994). *See also Veneklase v. City of Fargo*, 248 F.3d 738, 748 (8th Cir. 2001) (en banc). In this case, Defendant Barron is entitled to summary judgment on Plaintiff's §1983 claim against him. Consequently, Defendant City of Chesterfield is entitled to summary judgment on Plaintiff's §1983 claim as well.

Moreover, Defendants have presented evidence to show that the Chesterfield Police Department official policy, under General Order 24-02, includes rules governing the procedures officers must follow in effecting an arrest. The policy clearly states that an exception to the City's handcuffing policy may be made due to injuries. The Court, therefore, concludes that Plaintiff has

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

not identified any official policy that arguably played a role in his alleged injuries.

The Court also concludes that Plaintiff has failed to produce sufficient evidence from which a jury could reasonably find the existence of a relevant municipal custom. To prevail on her § 1983 claims against the City, Plaintiff must demonstrate the existence of this custom by showing: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City's employees; (2) the City's indifference to or tacit authorization of the misconduct after receiving notice thereof; and (3) that this custom was the moving force behind her constitutional violations. *See Kula*, 365 F.3d at 604.

No evidence exists in the record to support a claim that the City followed a custom of having its police officers, who have knowledge of a suspect's preexisting injuries, handcuff suspects behind their back, thereby aggravating their injuries. In addition, Plaintiff has offered no evidence that the police department failed to investigate previous incidents similar to the incident in question.[6] Accordingly, the Court grants Defendants' Motion with respect to Plaintiff's claims against the City of Chesterfield.

B. <u>State Law Tort Claims: Count Five</u>

Count Five is a claim for "assault and battery." "[A]n assault is any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Adler v. Ewing*, 347 S.W.2d 396, 402 (Mo. Ct. App. 1961). "A battery is the willful touching of the person of another, and has been said to be the consummation of the assault." *Id.* "An officer clothed with the warrant of law is answerable

---

[6] In his deposition, Defendant Johnson, Chesterfield Chief of Police, testified that during his twenty-year tenure, he received approximately six complaints regarding handcuffing. Johnson Dep. at 24. He testified that he investigated the complaints and either found them to be without merit or decided not to sustain them. *Id*. at 19. He also testified that he never received a complaint concerning police officers handcuffing a suspect behind the back. *Id*. at 23. Plaintiff has not offered any evidence to dispute Defendant Johnson's testimony.

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

in damages for assault and battery only when in performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment." *Neal v. Helbling*, 726 S.W. 2d 483, 487 (Mo. Ct. App. 1987) (citations omitted).

Plaintiff's assault and battery claims arise from the allegations that Defendant Barron used an unreasonable amount of force or show of force when arresting Plaintiff. The Court has already determined on the evidence presented that Defendant Barron did not use excessive force in arresting Plaintiff. In addition, the Court concludes that there is no evidence that Defendant Barron used an unreasonable show of force when he arrested and detained Plaintiff. Consequently, the Court finds that Defendant Barron is entitled to summary judgment on Plaintiff's assault and battery claims.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #81] is **GRANTED**.

An appropriate Order of Judgment shall accompany this Order.

Dated this <u>1st</u> day of June, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com